IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03097-M-RJ

RAYMONDO ACUNA,  )
                 )
        Plaintiff, )
                 )
    v.           )       **ORDER**
                 )
LT. M. JASTAL, et al., )
                 )
        Defendants. )

On April 25, 2024, Raymondo Acuna ("plaintiff"), a federal inmate proceeding without prepayment of fees, filed *pro se* a complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"). See [D.E. 1, 2, 7].

On November 1, 2024, the court, *inter alia*, conducted its initial review and allowed the action to proceed, but denied a motion to appoint counsel. See Order [D.E. 14].

On December 30, 2024, plaintiff moved, *inter alia*, for leave to amend. Mot. [D.E. 19].

On January 27, 2025, the court granted plaintiff leave to amend, allowing until February 18, 2025, to file an amended complaint, but denied preliminary injunctive relief. Order [D.E. 24].

On February 12, 2025, plaintiff filed a self-styled "motion for reconsideration to appoint counsel [sic]." Mot. [D.E. 25] (arguing counsel should be appointed because he has been retaliated against including miscalculation of his custody classification leading to his transfer to a maximum-security prison, he has physical maladies due to the injuries alleged in his complaint, he has been unsuccessful in obtaining counsel, he has limited education and no legal background, and his case "has become so complex due to all the retaliatory behavior.").

On March 3, 2025, plaintiff filed an amended complaint. See Am. Compl. [D.E. 27].

The court first turns to plaintiff's instant motion. See Mot. [D.E. 25]. To the extent he seeks reconsideration of the court's prior order: "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment[,]" but instead are "committed to the discretion of the district court." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). Because there has been no trial or change of law, and plaintiff fails to show any clear error causing manifest injustice in the prior order denying appointment of counsel, cf. Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017), the court DENIES the motion to the extent he seeks reconsideration [D.E. 25].

To the extent plaintiff instead again moves for appointment of counsel, there is no right to counsel in civil cases absent "exceptional circumstances." Jenkins v. Woodard, 109 F.4th 242, 247 (4th Cir. 2024); see Whisenant v. Yaum, 739 F.2d 160, 163 (4th Cir. 1984) (noting exceptional circumstances depends upon "the type and complexity of the case, and the abilities of the individuals bringing it" (quotation omitted)), abrogated in part on other grounds by Mallard v. U.S. Dist. Court for S. Dist. Court for S. Dist. Of Iowa, 490 U.S. 296, 300 n.2 (1989). Exceptional circumstances exist where (1) "the plaintiff 'has a colorable claim,'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'" Jenkins, 109 F. 4th at 247 (quotation omitted). In making this determination, a district court must assess "(1) whether the plaintiff asserts a claim that is not frivolous, (2) the difficulty of the claim, and (3) whether the plaintiff can present the claim considering the skill required to do so and the plaintiff's individual abilities." Id. at 248.

Contra plaintiff's assertions, this case is not complex. Some of his claims are nonfrivolous, but they are not difficult, and his filings show he is able to adequately present these claims. As such, the court also DENIES this motion to the extent he seeks appointment of counsel [D.E. 25].

Under 28 U.S.C. § 1915A, the court now conducts its initial review of plaintiff's amended complaint and, for the following reasons, allows the action to proceed in part.

## Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible. Although a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted), the pleading must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009).

The Bivens Court "'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" Iqbal, 556 U.S. at 675 (citation omitted); see Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001) ("The purpose of Bivens is to deter individual federal officers from committing constitutional violations."). Under Bivens, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

3

## Plaintiff's Amended Complaint:

Plaintiff generally alleges violations of his civil rights at F.C.I. Butner on December 17–18, 2023, "and beyond." Am. Compl. [D.E. 27] at 5. He names as defendants Warden Ricks, Lieutenant M. Jastal, Officer Finley, Officer Tighes, Case Manager Ms. Jefferson, "Mr. M. Halls, M.D. [sic]," and "John & Jean Does, RN who cared and attended to his care [sic]." Id. at 1, 3–4.

Plaintiff specifically alleges: on December 17, 2023, after he failed to get up for 9 p.m. count, Finley told him, "if you're not up in time for count tomorrow, I'm going to bring a team down here and we're gonna beat your ass [sic]"; he reported Finley's statement to the warden "and Region [sic]"; the next day, Jastal told him he was being placed in the "Special Housing Restriction" pending an "SIS investigation"; transport officers came to bring him from Butner #1 to Butner #2; when he arrived at Butner #2, he was told there was no "SIS investigation" and he was being placed in Special Housing pending disciplinary proceedings for threatening Finley; circa 1:45 p.m. on December 18, 2023, in the Butner #1 parking lot, as he attempted to climb into the transport vehicle while in full restraints, he was offered no help and, as a consequence, he fell and injured himself; he attributes this injury to negligence of Tighes "and his retaliatory actions [sic]"; when Tighes directed him to get up, he stated he needed medical attention due to the severity of his injuries; Tighes and Finley started yelling at him, and Tighes radioed for assistance; Jastal arrived and ordered him to get up, but he repeated that he needed medical attention and could not comply; Jastal ordered several officers to pick him up "by the chains"; he was "roughly shove headfirst into the transport vehicle," causing "further injury to his finger, leaving him without the full use of his right hand"; his neck, shoulders, elbow, and spine were injured from landing on the floorboard of the vehicle, but he received no medical attention for these injuries. Id. at 5–6. These allegations essentially echo his initial complaint. Compare id., with Compl. [D.E. 1] at 5–6.

4

Plaintiff further alleges that, circa December 20, 2023, medical personnel "deliberately gave false testimony (lied) [sic] without taking any x-rays of other than [of his] finger, with wanton and willful disregard" of his medical problems, and that, "after long periods of undergoing excruciating pains," he received "orthopedic therapy," but only for his finger. Id. at 6.

Plaintiff next alleges that Case Manager Ms. Jefferson "deliberately and with willful disregard sabotaged his security total points in order to raise his custody security points in order to raise his custody to be placed on a United States Prison instead of an F.C.I. [sic]." Id. at 7. Plaintiff contends this occurred because he reported the misconduct of officers pursuant to the incident on December 17 and 18, 2023. Id. Plaintiff claims that, due to Ms. Jefferson's actions, he has been deprived visitation and cannot see his mother as often, he has a "higher security threat assessment," and he is not being credited "his First Step Act qualifications [sic]." Id. Plaintiff asserts it is against Federal Bureau of Prisons ("BOP") policy "to retaliate for reporting officer's erroneous actions for which Jefferson is actionable at this time [sic]." Id.

Plaintiff next alleges that Warden Rich "was made aware of his subordinates' threats" by plaintiff's mother and by plaintiff, but he "failed to properly act to prevent the violation of Constitutional rights and escalate to become unmanageable [sic]." Id. Plaintiff further alleges that his mother made a phone call on December 17, 2023, reporting the threat made against plaintiff "to Region [sic]," "and Region [sic] sent a copy to the warden who failed to properly act to resolve the situation without a violation of constitutional rights [sic]." Id.

Plaintiff further alleges that "Dr. Hall (surgeon) was schedule[d] to perform operation July 29, 2024, to [plaintiff] with wanton and deliberate indifference postponed it [sic]," plaintiff still "does not have his operation done [sic]," and plaintiff "was left in this poor condition [sic]." Id.

For relief, plaintiff seeks punitive and compensatory damages. Id. at 8.

Discussion:

First, to the extent plaintiff seeks to challenge denial of First Step Act credits to which he purportedly is entitled, such claims address the length of his custody and sound in habeas corpus, not in a civil rights action under Bivens. See Skinner v. Switzer, 562 U.S. 521, 525 (2011); Wilkinson v. Dotson, 544 U.S. 74, 81 (2005); Preiser v. Rodriguez, 411 U.S. 475, 498–500 (1973).

Next, plaintiff's instant Eighth Amendment claims against Jastal and Finley are not clearly frivolous. See Hudson v. McMillian, 503 U.S. 1, 6–8 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986); Fields v. Fed. Bureau of Prisons, 109 F.4th 264, 274 (4th Cir. 2024).

Plaintiff's claims against other defendants, however, either (1) are too threadbare to survive initial review, see Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"), (2) fail to plausibly allege direct or supervisory liability claims, see Davidson v. Cannon, 474 U.S. 344, 347 (1986) ("Where a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is constitutionally required.'" (citation omitted)); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (noting disagreements over forms of treatment concern medical judgments, not the Eighth Amendment); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (outlining governing standard for supervisory liability); Adams, 40 F.3d at 74 (noting bare assertions of retaliation do not establish a claim of constitutional dimension), or (3) fail to satisfy the framework for extending the Bivens remedy, see Egbert v. Boule, 596 U.S. 482, 492 (2022) (noting that Ziglar v. Abbasi, 582 U.S. 120 (2017), announced a two-step framework for Bivens claims, but noting that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," and

suggesting a "rational reason" to defer to Congress will be present "in most every case"); Annappareddy v. Pascale, 996 F.3d 120, 132–34 (4th Cir. 2021) (noting, "*Bivens* has never 'been extended to a Fifth Amendment due process claim'").

The court further notes that plaintiff's amended complaint again acknowledges that he did not exhaust administrative remedies as to his claims before filing this action. See Am. Compl. [D.E. 27] at 8. Plaintiff, however, asserts that: "remedys [sic] kept disappearing"; a counselor would not give him "the next step to move forward"; and he "would be subject to further retaliatory behavior every time [he] would attempt to refile." Id. Accordingly, if defendants seek to rely upon plaintiff's admitted failure to exhaust administrative remedies as an affirmative defense, defendants should, before discovery, address whether such remedies were "available." Ross v. Blake, 578 U.S. 632, 642–44 (2016); see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022).

## Conclusion:

In sum, the court: DENIES the motion for reconsideration [D.E. 25]; ALLOWS the operative amended complaint [D.E. 27] to PROCEED against Jastal and Finley, DISMISSES plaintiff's other claims against the other defendants, but DISMISSES WITHOUT PREJUDICE as to his right to seek habeas relief for First Step Act claims; DISMISSES WITHOUT PREJUDICE as defendants Mr. M. Halls, Ms. Jefferson, Warden Ricks, Officer Tighes, and the "John & Jean Does [sic]"; and REFERS the action to U.S. Magistrate Judge Robert B. Jones, Jr., for entry of a scheduling order to include a new deadline for Jastal and Finley to answer or otherwise defend.

SO ORDERED this 2d day of May, 2025.

Richard E. Myers II
RICHARD E. MYERS II
Chief United States District Judge