| | |
|---|---|
| RAYMONDO ACUNA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LT. M. JASTAL, et al., )<br>)<br>Defendants. ) | **ORDER** |

This cause is before the court on defendants' motion to dismiss. Mot. [D.E. 31]. As discussed below, the court grants in part and denies in part this motion.

Relevant Procedural History:

On April 25, 2024, Raymondo Acuna ("plaintiff"), a federal inmate proceeding without prepayment of fees, filed *pro se* a complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"). See [D.E. 1, 2, 7].

On November 1, 2024, the court, *inter alia*, conducted its initial review and allowed the action to proceed. See Order [D.E. 14].

On March 3, 2025, plaintiff filed an amended complaint as to claims at F.C.I. Butner on December 17–18, 2023, "and beyond," naming as defendants Warden Ricks, Lieutenant M. Jastal, Officer Finley, Officer Tighes, Case Manager Ms. Jefferson, "Mr. M. Halls, M.D. [sic]," and "John & Jean Does, RN who cared and attended to his care [sic]." See Am. Compl. [D.E. 27] at 1, 3–5.

Plaintiff's specifically alleges, *inter alia*, that: on December 17, 2023, after he failed to get up for 9 p.m. count, Finley told him, "if you're not up in time for count tomorrow, I'm going to bring a team down here and we're gonna beat your ass [sic]"; he reported Finley's statement to the

Warden "and Region [sic]"; the next day, Jastal told him he was being placed in the "Special Housing Restriction" pending a "SIS investigation"; transport officers came to bring him from Butner #1 to Butner #2; when he arrived at Butner #2, he was told there was no "SIS investigation" and he was being placed in Special Housing pending disciplinary proceedings for threatening Finley; circa 1:45 p.m. on December 18, 2023, in the Butner #1 parking lot, as he attempted to climb into the transport vehicle while in full restraints, he was offered no help and, as a consequence, he fell and injured himself; he attributes this injury to negligence of Tighes "and his retaliatory actions [sic]"; when Tighes directed him to get up, he stated he needed medical attention due to the severity of his injuries; Tighes and Finley started yelling at him, and Tighes radioed for assistance; Jastal arrived and ordered him to get up, but he repeated that he needed medical attention and could not comply; Jastal ordered several officers to pick him up "by the chains"; he was "roughly shoved headfirst into the transport vehicle," causing "further injury to his finger, leaving him without the full use of his right hand"; his neck, shoulders, elbow, and spine were injured from landing on the floorboard of the vehicle, but he received no medical attention for these injuries. Id. at 5–6.

Plaintiff further alleges that, circa December 20, 2023, medical personnel "deliberately gave false testimony (lied) [sic] without taking any x-rays of other than [of his] finger, with wanton and willful disregard" of his medical problems, and that, "after long periods of undergoing excruciating pains," he received "orthopedic therapy," but only for his finger. Id. at 6.

Plaintiff also alleges, after he reported the December 17 and 18, 2023, officer misconduct, Ms. Jefferson, in retaliation, "sabotaged his security total points," causing him to be moved to a U.S. Prison instead of an F.C.I., leading to the deprivation of his visitation rights, a "higher security threat assessment," and failure to credit him "his First Step Act qualifications [sic]." See id. at 7.

2

Plaintiff next alleges that Warden Rich "was made aware of his subordinates' threats," but failed to prevent the constitutional violations. See id.

Plaintiff also alleges that Dr. Hall, a surgeon, was scheduled to perform an operation on July 29, 2024, but "with wanton and deliberate indifference postponed it [sic]." Id.

For relief, plaintiff seeks punitive and compensatory damages. Id. at 8.

On May 1, 2025, the court, *inter alia*, conducted its initial review of the amended complaint, allowed claims to proceed against Lieutenant Jastal and Officer Finley ("defendants"), but dismissed other claims and defendants. See Order [D.E. 28].

On May 15, 2025, defendants filed a motion for leave to file excess pages, Mot. [D.E. 30], a motion to dismiss the complaint for failure to state a claim, Mot. [D.E. 31], a memorandum in support [D.E. 32], and a motion to stay discovery and all deadlines pending the court's resolution of defendant's motion to dismiss, Mot. [D.E. 33]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion to dismiss, the response deadline, and the consequences of failing to respond. [D.E. 34].

On July 7, 2025, plaintiff moved for an extension of time to respond. Mot. [D.E. 36].

On July 31, 2025, defendants filed a notice of supplemental authority. [D.E. 37].

On October 28, 2025, the court granted defendants' motions seeking to file excessive pages and a stay of the scheduling order, and granted in part plaintiff's motion for an extension of time, allowing him until November 20, 2025, to respond to the motion to dismiss. See Order [D.E. 38].

On November 19, 2025, plaintiff filed his response in opposition. Pl.'s Resp. [D.E. 39].

Legal Standard:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp.

3

v. Twombly, 550 U.S. 544, 555–63 (2007). To withstand a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted). The court, however, need not accept the legal conclusions drawn from the facts, see id. at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Moreover, although the court liberally construes *pro se* filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), all complaints must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

Discussion:

Defendants argue, *inter alia*, that plaintiff failed to exhaust his administrative remedies before filing this action and that plaintiff fails to state viable Bivens claims. See [D.E. 32, 36].

The Prison Litigation Reform Act ("PLRA") states, in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Administrative exhaustion under the PLRA, however, is mandatory only if the grievance procedure is "available" to the prisoner. See Ross v. Blake, 578 U.S. 632, 642 (2016) ("Ross"). Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart

4

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44.

In his response to the motion to dismiss, plaintiff argues, *inter alia*, that prison official "malfeasance" – including repeated and consistent denials of access to the grievance procedure, and intentional failures to process his grievances in a timely fashion – prevented him from exhausting administrative remedies for these claims. See Pl.'s Resp. [D.E. 39].

On the present record, it is unclear if administrative remedies were "available" to plaintiff. Ross, 578 U.S. at 642–44 (2016); see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022) (vacating and remanding summary judgment granted due to the plaintiff's failure to exhaust, observing there were questions of material fact as to whether the prison's grievance procedure was "available"). Thus, defendants presently have not pleaded and proved plaintiff's failure to exhaust administrative remedies. Jones, 549 U.S. at 216–17 (concluding that, under the PLRA, failure to exhaust administrative remedies is an affirmative defense); see Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

Turning to plaintiff's Bivens claims, in Ziglar v. Abbasi, 582 U.S. 120, 130–31 (2017) ("Abbasi"), the Supreme Court noted it had recognized Bivens causes of action in only three instances – a Fourth Amendment claim in Bivens itself, a claim under the Fifth Amendment's Equal Protection Clause in Davis v. Passman, 442 U.S. 228 (1979) ("Davis"), and an Eighth Amendment deliberate indifference claim in Carlson v. Green, 446 U.S. 14 (1980) ("Carlson").

The Court noted, to recognize a Bivens cause of action, a court must discern whether it has authority "to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." Abbasi, 582 U.S. at 133. The Court also opined that expanding the Bivens remedy is now a "disfavored judicial activity." Id. at 135 (quotation omitted).

5

If a claim "presents a new Bivens context," id. at 139, a court must assess whether any "special factors counsel[ ] hesitation" in recognizing a remedy "in the absence of affirmative action by Congress." Id. at 136; but see Egbert v. Boule, 596 U.S. 482, 492 (2022) (acknowledging, although Abbasi "describe[s] two steps," the steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," and suggesting a "rational reason" to defer to Congress will be present "in most every case").

A Bivens claim is "new" if the case differs "in a meaningful way from previous Bivens cases decided by" the Court. Abbasi, 582 U.S. at 139. Such meaningful differences include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 140.

Here, plaintiff's excessive-force and retaliation claims against defendants present a "new context" that is meaningfully different from the causes of action the Supreme Court previously recognized in Bivens, Davis, or Carlson. See Goldey v. Fields, 606 U.S. 942, 942–45 (2025) (holding an inmate's excessive-force claims alleging physical abuse was a "new context" for a Bivens claim); Earle v. Shreves, 990 F.3d 774, 779 (4th Cir.) (finding an inmate's retaliation claim was a "new context" for a Bivens claim), cert. denied, 142 S. Ct. 358 (2021).

Also, there are "special factors" counseling hesitation before expanding the Bivens remedy here because alternative relief is available either via BOP grievance procedure or an action under the Federal Tort Claims Act. See Abbasi, 582 U.S. at 136, 141–42, 148; Earle, 990 F.3d at 780.

Answering the Supreme Court's ultimate Bivens remedy expansion query for plaintiff's excessive force and retaliation claims – "whether there is any reason to think that Congress might

6

be better equipped to create a damages remedy," Egbert, 596 U.S. at 492 – there indeed is a "rational reason" for the court instead to defer to Congress for creation of a damages remedy in this case, and the court declines to extend the Bivens remedy, see Abbasi, 582 U.S. at 140, 147 (noting, extension of the Bivens remedy "is a decision for the Congress to make, not the courts," and "even a modest [Bivens] extension is still an extension").

By contrast, accepting as true plaintiff's claims that, despite his requests to defendants, he received no contemporaneous medical attention after the fall and use-of-force incident circa 1:45 p.m. on December 18, 2023, that resulted in injuries to, *inter alia*, his finger, which later required "orthopedic therapy [sic]," see Am. Compl. [D.E. 27] at 5–6, his allegations that defendants were deliberately indifferent to his serious medical needs "nudged [his] claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570; see Estelle v. Gamble, 429 U.S. 97, 104 (1976), and thus survives defendants' instant motion to dismiss, cf. Iqbal, 556 U.S. at 678–79.

## Conclusion:

In sum, the court DENIES WITHOUT PREJUDICE defendants' instant motion to dismiss [D.E. 33] as to plaintiff's purported failure to exhaust administrative remedies, GRANTS IN PART the motion as to the excessive-force and retaliation claims, but DENIES the motion as to the deliberate indifference claims. Once defendants answer the complaint, the court then REFERS the action to Magistrate Judge Robert B. Jones, Jr. for entry of a new scheduling order.

SO ORDERED this 7th day of January, 2026.

RICHARD E. MYERS II
Chief United States District Judge

7

Case 5:24-ct-03097-M-RJ    Document 40    Filed 01/08/26    Page 7 of 7